JS - 6         O

**CC: Bankruptcy**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>EDWARD G. MYCEK<br>    DEBTOR,<br>_____<br><br>Edward G. Mycek,<br><br>        Appellant,<br><br>    v.<br><br>Rob Danielson, Chapter<br>13 Trustee,<br><br>        Appellee.<br>_____. | Case No. 5:12-cv-00369-JGB<br>USBC Case No. 6:11-46138-WJ<br><br>**ORDER VACATING THE BANKRUPTCY COURT'S ORDER DISMISSING THE CASE AND REMANDING FOR FURTHER PROCEEDINGS** |

**I. BACKGROUND**

Before the Court is an appeal of the Bankruptcy Court's order dismissing Appellant's Chapter 13 bankruptcy case for failure to demonstrate good faith and feasibility. For the reasons set forth below, the Court vacates the Bankruptcy Court's order and remands for consideration of the facts and issues in this case in light of this Court's order and the Ninth Circuit decision in <u>In re Welsh</u>, 711 F.3d 1120 (9th Cir. 2013).

**A.  Factual Background**

Appellant Edward G. Mycek, the debtor in the underlying bankruptcy case, is between the ages of 68 and 69. (Appellant's Excerpts of Record ("EOR") at 159, ¶ 2.) In 2008, after Appellant's spouse became terminally ill, Appellant used one of his individual retirement accounts ("IRAs") to help pay for her medical expenses. (Id.) When these funds were depleted, Appellant applied for a home equity line of credit against their residence, and the loan was used to pay for medical care and repairs to their residence. (Id.) When Appellant could no longer afford to pay for his spouse's home health care, he retired early to care for her himself. (EOR at 159, ¶ 3.)

Around August 2010, Appellant underwent double bypass surgery. (EOR at 159, ¶ 4.) Within six months, Appellant and his spouse underwent five major surgeries. (Id.) On January 11, 2011, Appellant's spouse passed away, and shortly after, Appellant suffered health complications requiring him to undergo physical therapy. (Id.)

As a result, Appellant was unable to pay his second mortgage payments and unsecured debts without depleting

2

his IRAs.  (EOR at 159-60, ¶ 5.)  Subsequently, Appellant surrendered his vehicle and sought the advice of counsel.  (EOR at 160, ¶ 6.)  Appellant owes approximately $42,000.00 to unsecured creditors.  (Id.)  Five of the 13 unsecured creditors are medical providers for Appellant's spouse's medical care.  (Id.)

**B.   Statement of the Case**

On September 23, 2011, Appellant filed a Chapter 13 bankruptcy petition (Case No. 6:11-bk-40144-WJ).  (EOR at 323-75.)  At the hearing on November 2, 2011 for the confirmation of the Chapter 13 plan, the Bankruptcy Court denied confirmation and dismissed the case.  (EOR at 393.)  On November 29, 2011, Appellant filed another Chapter 13 petition (Case No. 6:11-bk-46138-WJ).  (EOR at 1-54.)  Appellant's schedules indicated that he is a below-median income debtor.  (EOR at 45, lines 21-22.) On December 16, 2011, Appellant filed a motion to avoid junior lien on his principal residence under 11 U.S.C. § 506(d).  (EOR at 82-117.)

Appellant's Chapter 13 plan proposed to pay $155.00 per month for a period of 44 months.  (EOR at 55-67.)  At the Chapter 13 confirmation hearing on January 11, 2012, the Bankruptcy Court sustained the trustee's objection to the plan, denied confirmation, and dismissed the case.

(EOR at 415:18-19.)  The court noted that there was "insufficient evidence for the debtor to demonstrate that the plan is feasible or that it has been filed in good faith."  (EOR at 416:2-4.)  The court entered an order dismissing the case on January 12, 2012.  (EOR at 132.)

On January 26, 2012, Appellant filed a motion for reconsideration regarding the dismissal.  (EOR at 133-285.)  The Bankruptcy Court denied the motion for reconsideration and entered an order to that effect on February 15, 2012.  (EOR at 295-97.)

On February 24, 2012, Appellant filed a timely notice of appeal of the Bankruptcy Court's order and notice of dismissal with the Bankruptcy Appellate Panel ("BAP"). (EOR at 298-305.)  Appellee Rod Danielson, the Chapter 13 Trustee in the underlying bankruptcy case("Trustee"), filed a statement of election to have the appeal transferred to the district court.  (EOR at 306-307.)

Appellant filed his Opening Brief on April 20, 2012. (Doc. No. 10.) Appellee filed his Opening Brief on May 1, 2012.  (Doc. No. 11.)  Appellant filed his Reply Brief on May 14, 2012.  (Doc. No. 12.)

On January 7, 2013, this appeal was transferred from Judge Percy Anderson to Judge Jesus G. Bernal. (Doc. No. 14.)

On April 9, 2013, Appellant filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) providing the Court with a copy of a recent Ninth Circuit decision, Drummond v. Welsh (In re Welsh), No. 12-60009 (March 25, 2013)[1], that purports to be related to the issues presented on this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

Title 28 U.S.C. § 158(a) gives the district court jurisdiction to hear appeals from the bankruptcy court regarding "final judgments, orders, and decrees." 28 U.S.C. § 158(a).

The court reviews the bankruptcy court's findings of fact under a "clearly erroneous" standard and conclusions of law "de novo." In re Daniels-Head & Associates, 819 F.2d 914, 919 (9th Cir. 1987); Fed. R. Bankr. P. 8013. Under the abuse of discretion standard, the court first determines de novo "whether the [bankruptcy] court identified the correct legal rule to apply to the relief

---

[1] Drummond v. Welsh (In re Welsh), 711 F.3d 1120 (9th Cir. 2013).

5

requested." <u>In re Taylor</u>, 599 F.3d 880, 887 (9th Cir. 2010) (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009)).

   A de novo review is an independent determination made with no deference to the trial court. <u>In re AFI Holdings, Inc.</u>, 525 F.3d 700, 702 (9th Cir. 2008). Therefore, de novo review requires the court to consider the matter anew, as if it had not been heard before, and as if no decision had been rendered previously. <u>Dawson v. Marshall</u>, 561 F.3d 930, 933 (9th Cir. 2009).

   If the bankruptcy court identified the correct rule, the court then must determine whether its application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." <u>In re Taylor</u>, 599 F.3d at 887 (citing <u>Hinkson</u>, 585 F.3d at 1262).  "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." <u>In re Taylor</u>, 599 F.3d at 887-88 (citing <u>Hinkson</u>, 585 F.3d at 1262).

## III. DISCUSSION

A debtor must file a Chapter 13 plan in a Chapter 13 bankruptcy case. 11 U.S.C. § 1321. The Bankruptcy Court shall confirm a plan if, in part, the plan is proposed in good faith and the petition was filed in good faith. 11 U.S.C. § 1325(a)(3), (7). In addition, the Bankruptcy Court shall confirm a plan if "the debtor will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6). Denial of confirmation is a basis for dismissal of a Chapter 13 case. 11 U.S.C. § 1307(c)(5).

Here, Appellant appeals the Bankruptcy Court's order denying confirmation of the plan and dismissing the case. (Appellant's Opening Brief ("Appellant's Opening Br.") at 1.) The Bankruptcy Court dismissed the case because there was "insufficient evidence for the debtor to demonstrate that the plan is feasible or that it has been filed in good faith." (EOR at 416:2-4.) For the reasons set forth below, the Court vacates the Bankruptcy Court's order and remands the case for consideration of the facts and issues in light of the Court's order and the subsequent Ninth Circuit opinion in In re Welsh, 711 F.3d 1120 (9th Cir. 2013).

**A.   Feasibility under Section 1325(a)(6)[2]**

Under the feasibility standard of 11 U.S.C. § 1325(a)(6), "a court may not approve a plan unless, after considering all creditor's objections and receiving the advice of the trustee, the judge is persuaded that 'the debtor will be able to make all payments under the plan and to comply with the plan.'" Till v. SCS Credit Corp., 541 U.S. 465, 480 (2004).  To demonstrate that their proposed plan is 'feasible,' Chapter 13 debtors have to show that their plan has a "reasonable chance of success."  In re Bassett, 413 B.R. 778, 788 (Bankr. D. Mont. 2009) (citing In re Hungerford, 2001 WL 36211305 at *8 (Bankr. D. Mont. Mar. 22, 2001)).  "[Feasibility] is a finding of fact, which [a court] may not disturb on appeal unless it is clearly erroneous." In re Gavia, 24 B.R. 573, 574 (B.A.P. 9th Cir. 1982) (citations omitted). "[A] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

---

[2] At the confirmation hearing, Trustee requested dismissal because Appellant's plan failed to account "for any kind of surprise expenses."  (EOR at 407:16-19.) Appellant argues that since section 1325(b)(1)(B) requires that all of the debtor's projected disposable monthly income to be pledged to the plan, Appellant's failure to account for "surprise expenses" should not be considered in determining feasibility of the plan. (Appellant Opening Br. at 27.)  Since the Bankruptcy Court did not state that factor in reaching its decision that Appellant failed to provide evidence as to the feasibility of the plan, the Court does not address that issue on appeal.  (See EOR at 428:22-433:21.)

8

conviction that a mistake has been committed." Hinkson, 585 F.3d at 1260 (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

Here, the Bankruptcy Court dismissed Appellant's Chapter 13 case in part because it found there was "insufficient evidence for the debtor to demonstrate that the plan is feasible." (EOR at 416.) At the hearing on Appellant's motion for reconsideration, the Bankruptcy Court found that Appellant "has not provided any evidence to demonstrate that [he] can pay his other expenses" after using 40 percent of his income to retain his primary residence. (EOR at 431:19-432:6.) The court held that Schedule J is inadequate since it is only a projection and is "not evidence of future payments nor is it even evidence of prior payments." (EOR at 432:9-10.) Therefore, the court found that "simply relying on schedule I and J is not sufficient especially for zero percent cases that are already on the margin." (EOR at 434:3-5.) The court reasoned that "the need to satisfy the elements of Section 1325(a)(6) are highest in zero percent cases." (EOR at 429:24-25.)

Because Appellant proposed a zero percent plan, the Bankruptcy Court here required additional evidence to prove feasibility of the plan. The Bankruptcy Court did not cite to any federal law, federal rules, or local

9

rules to support its additional requirement.  Neither does the Trustee's Opening Brief provide any legal support for the Bankruptcy Court's reasoning.  (See Appellee's Opening Br. at 20-23.)  While, as the Bankruptcy Court stated, schedule J "is a projection," Courts have consistently used schedules I and J to determine plan payments and disposable income in a Chapter 13 case.  See e.g., In re Reyes, 401 B.R. 910, 914 (Bankr. C.D. Cal. 2009); Hamilton v. Lanning, 130 S. Ct. 2464, 2470-71 (2010); In re Barrantes, 2006 WL 2010792 at *3-4 (N.D. Cal. June 28, 2006).  In his Opening Brief, Trustee fails to provide any support for the Bankruptcy Court's view that schedule J is merely an unreliable "guess by the Debtor." (Appellee's Opening Br. at 20-23.)  Ordinarily, the trustee and the court examine the debtor's budget to determine whether the debtor has sufficient projected net income to pay all anticipated expenses.  See e.g., In re Slusher, 359 B.R. 290, 293 (Bankr. D. Nev. 2007) (emphasis added) ("Under chapter 13, a debtor must normally commit all of his or her *projected* disposable income to payments under the plan.").  A Chapter 13 plan is, by its nature, a projection of a debtor's future payments under its terms. Additionally, the debtor in a Chapter 13 bankruptcy case need not prove that the plan is guaranteed to be successful.  In re Anderson, 18 B.R. 763, 765 (Bankr.

S.D. Ohio 1982).  Therefore, the Bankruptcy Court erred in requiring Appellant to provide additional evidence.

Second, the Bankruptcy Court stated hypothetically that if Appellant's expenses are inaccurate by as little as $10 or $20 each, it would create a deficit over the life of the plan.  (EOR at 433:6-16.)  The Bankruptcy Court's determination of feasibility should be based upon the facts before the court at the time of confirmation rather than hypothetical scenarios.  See 11 U.S.C. § 1325(a)(6); In re Anderson, 18 B.R. at 765 ("This Court must judge the feasibility of the debtor's proposal as the facts appear at the time of confirmation.").  Therefore, the court erred in considering hypothetical scenarios to determine the feasibility of Appellant's plan.

Thirdly, the Bankruptcy Court stated that "the need to satisfy the elements of Section 1325(a)(6) are highest in zero percent cases."  (EOR at 429:24-25.)  The court noted that in a 20 percent or 30 percent case, a plan can be modified to make adjustments downward or upward depending on the circumstances.  (EOR at 429:16-20.)  On the other hand, "[n]o such leeway exists with a zero percent plan."  (EOR at 429:20-21.)  While the percentage paid to unsecured creditors is relevant to the determination of good faith under the totality of

11

circumstances, it is unclear why that factor is relevant to the feasibility of a Chapter 13 plan.  As stated above, section 1325 requires that the debtor "be able to make all payments under the plan and to comply with the plan."  11 U.S.C. § 1325(a)(6).  In general, the debtor "has the burden of proof to establish, by a preponderance of the evidence, that [the] plan complies with the provisions of the Bankruptcy Code."  In re Renteria, 456 B.R. 444, 447 (Bankr. E.D. Cal. 2011) (citing In re Arnold and Baker Farms, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994) (aff'd 85 F.3d 1415 (9th Cir. 1996), cert. denied 519 U.S. 1054 (1997))).  Neither the Bankruptcy Code nor case law changes the burden of proof depending on the specific features of a Chapter 13 case.  The Trustee's Opening Brief does not cite to any authority supporting the view that a debtor's burden of proof varies depending on the percentage of payment to unsecured creditors; rather, Trustee merely quotes portions of the Bankruptcy Court's holding regarding the feasibility of the plan.  Therefore, the Bankruptcy Court erred in using the percentage of payment to determine whether Appellant provided sufficient evidence that the proposed plan is feasible.

     Reviewing the Bankruptcy Court's conclusions of law de novo, the Court finds that the Bankruptcy Court committed error in finding that schedule J is an

unreliable guess by the debtor, considering hypothetical scenarios, and altering the debtor's burden of proof based on percentage of payment to unsecured creditors.

**B.   Good Faith under 11 U.S.C. §§ 1325(a)(3) and (7)**

Under Title 11 U.S.C. §§ 1325(a)(3) and (7), a court shall confirm a Chapter 13 plan only if it was proposed in good faith and the bankruptcy petition was filed in good faith. 11 U.S.C. §§ 1325(a)(3), (7).  The Ninth Circuit holds that to determine good faith, the "bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner."  In re Goeb, 675 F.2d 1386, 1390 (9th Cir. 1982).

The Ninth Circuit stressed that while a bankruptcy court may consider the amount of the proposed payment, "the court must make its good-faith determination in the light of all militating factors."  Id.  Courts should determine a "a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan."  Id.  In addition, the court can consider other factors such as the debtor's history of filings and dismissals, whether the debtor only intended to defeat state court litigation, and whether egregious

13

behavior is present.  In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999).  The Leavitt Court identified these factors in determining whether a debtor acted in bad faith.  Leavitt, 171 F.3d at 1224.  However, courts have used the Leavitt standard to determine whether a bankruptcy plan was proposed in good faith.[3] See In re Lepe, 470 B.R. 851, 857-58 (B.A.P. 9th Cir. 2012); In re Walsh, 465 B.R. 843, 851-52 (B.A.P. 9th Cir. 2012); Ingram v. Burchard, 482 B.R. 313, 319 (Bankr. N.D. Cal. 2012); In re Tran, 814 F. Supp. 2d 946, 950 (N.D. Cal. 2011).

   The Bankruptcy Court considered the following factors in finding that Appellant has failed to carry his burden of proving good faith under sections 1325(a)(3) and (a)(7):

> First, the Debtor is solvent. The value of all of his assets exceeds the value of all his liabilities by $133,000. Second, the Debtor has proposed a zero percent plan.  Third, Debtor received the benefit of a cash loan of $205,000 from a secured lender and yet seeks to strip

---

[3] Some courts have held, however, that the bankruptcy court can determine that a Chapter 13 petition is not filed in good faith without necessarily finding that the debtor was acting in bad faith.  In re Lavilla, 425 B.R. 572, 576 (Bankr. E.D. Cal. 2010) (citing In re Guastella, 341 B.R. 908, 920 (B.A.P. 9th Cir. 2010)).

14

    that lender's lien and pay the lender nothing
    through the plan.  Fourth, the Debtor is a
    single person with no dependents or others
    residing with him and he proposed to spend over
    50 percent of future income to retain a four
    bedroom home to the detriment of the general
    unsecured creditors.  The Debtor leased a high
    end vehicle five months prior to filing the
    bankruptcy case.  The Debtor did not pursue more
    modest transportation that would have freed up
    more funds to pay creditors pre petition.
    Sixth, the Debtor only made four payments on the
    lease.  Seventh, the Debtor extensively drove or
    allowed someone else to drive the vehicle in
    excess of the mileage limit and then abandoned
    it back to the Debtor [sic] and eighth the
    Debtor proposes to abandon the well used vehicle
    and pay that lessor and other general unsecured
    creditors nothing."
(EOR at 447:17-448:16.)

   During the pendency of this appeal, the Ninth Circuit issued its decision in <u>In re Welsh</u>, 711 F.3d 1120 (9th Cir. 2013).  The issue before the court in <u>Welsh</u> was whether payments to secured creditors and Social Security income, "while properly accounted for in the calculation of disposable income, nevertheless may be considered as

evidence that the plan was not proposed in good faith under 11 U.S.C. § 1325(a)(3)." In re Welsh, 711 F.3d at 1126 n. 28. The Ninth Circuit held that a court may not consider a debtor's social security income or a debtor's payments to secured creditors as part of the inquiry into good faith under 11 U.S.C. § 1325(a). Id. at 1135. Even though the court in Welsh focused on these issues as they pertain to an above-median income debtor, the Court finds that the analysis in Welsh could potentially be relevant to the issues presented in this case. See In re Berry, 2013 WL 249862, at *3 (Bankr. E.D. Wash. Jan. 23, 2013) (finding that the court's logic and analysis in In re Welsh, 465 B.R. 843 (B.A.P. 9th Cir. 2012) pertaining to the calculation of disposable income for above-median income debtors was relevant to an analysis under 11 U.S.C. § 1325(b)(2) relating to below-median income debtors). Accordingly, the Court vacates the Bankruptcy Court's order and remands the case for consideration of the facts and issues in light of the Ninth Circuit decision in Welsh.

**C. Minimum Payment Requirement to Unsecured Creditors**

Appellant states in his Reply Brief that "[t]he underlying basis of this appeal stems from the fact that an arbitrary policy requiring a 10% minimum payment to unsecured creditors has been imposed on Chapter 13

debtors by [the] Bankruptcy Court." (Appellant's Reply Br. at 14.) The Bankruptcy Court discussed the issue of minimum repayment in dismissing the first Chapter 13 case. (EOR at 394:14-396:13.) Appellant argues that the Bankruptcy Court misapplied the rationale of the In re Tran case without considering the totality of circumstances of this specific case.[4] (Appellant's Reply Br. at 15.)

The Bankruptcy Court's discussion of In re Tran and minimum percentage of payment to unsecured creditors occurred at the confirmation hearing for Appellant's first Chapter 13 bankruptcy case (Case No. 11-40144). (EOR at 389-399.) The court dismissed that case on November 2, 2011. (EOR at 393:18-19.) The appeal now before the Court pertains to Appellant's second bankruptcy case (Case No. 11-46138). At the confirmation hearing for Appellant's second bankruptcy case, the Bankruptcy Court explicitly stated that its comments should not be construed to suggest that a "10 percent plan would solve" the lack of good faith issue. (EOR at 454:10-13.) In addition, even though the court

---

[4] In In re Tran, 814 F. Supp. 2d 946 (N.D. Cal. 2011) the court considered the debtor's attempt to avoid the second deed of trust on the residence and nominal payment to unsecured creditors in upholding the bankruptcy court's finding that the debtor was not acting in good faith. Tran, 814 F. Supp. 2d at 950-51. In that case, the debtor filed a chapter 7 case, obtained a discharge, and subsequently filed a Chapter 13 case.

17

considered the percentage payment to unsecured creditors, the court did identify a specific percentage payment to unsecured creditors as a requirement for confirmation of the plan. (EOR at 447:21-448:16.) On the record presented in this case, the Bankruptcy Court did not impose a minimum percentage requirement. Therefore, the Court does not address the issue of whether the Bankruptcy Court can impose a minimum percentage repayment to unsecured creditors as a prerequisite to finding good faith.

**IV. CONCLUSION**

For the reasons set forth above, the Court vacates the Bankruptcy Court's order and remands for consideration of the facts and issues in this case in light of this Court's order and the Ninth Circuit decision in <u>In re Welsh</u>, 711 F.3d 1120 (9th Cir. 2013).

Dated: October 22, 2013

JESUS G. BERNAL
United States District Judge

18